OPINION
{¶ 1} Defendant-appellant Sherman Antonio Brown appeals from his conviction and sentence, following a no-contest plea, to one count of Aggravated Robbery. Brown's appellate counsel has filed a brief pursuant to Anders v. California (1967), 386 U.S. 738, indicating that he has found no potential assignments of error having arguable merit.
 {¶ 2} Pursuant to Anders v. California, supra, we served Brown with an entry notifying him that his attorney had filed anAnders brief, and affording him the opportunity to file his own, pro se brief within 60 days of the date of our entry. Brown has not filed a pro se brief.
 {¶ 3} Also pursuant to Anders v. California, we have performed our duty to review the record independently. In this connection, we have reviewed videotapes of a trial ending in a hung jury, which preceded Brown's no-contest plea, of certain pre-trial proceedings, and of the plea and sentencing hearings. This appeal is now ripe for decision.
 I {¶ 4} Brown was charged with two counts of Felonious Assault, each with a firearm specification, and two counts of Aggravated Robbery, each with a firearm specification. Because Brown was only fifteen at the time of the alleged criminal acts, he was originally accused of being delinquent by reason of having committed acts that, if committed by an adult, would be the felonies with which he was later charged. In transfer proceedings before the Juvenile Division of the Montgomery County Juvenile Court, probable cause was found that Brown committed the acts, and the Juvenile Court made the necessary findings to order Brown to be transferred to the adult criminal system. Brown was thereafter charged by indictment as noted above.
 {¶ 5} After the parties had exchanged discovery, the State filed a motion in limine indicating its desire to offer evidence of a prior offense that Brown had been found delinquent by reason of having committed, on the theory that it being sufficiently similar to the offenses charged, and having been committed five months before the offenses charged, it tended to prove identity and lack of mistake. After a hearing, the trial court ruled against the State on this issue.
 {¶ 6} A plea bargain offered shortly before trial was rejected by Brown, and he proceeded to trial, by jury, on the charged offenses. The State offered evidence tending to prove that Brown had shot two men, Jason and Derren Mapp, who are brothers, while they were in a van being driven by Jason Mapp. This testimony included the testimony of the Mapp brothers. Brown offered alibi testimony from three witnesses who testified that Brown was helping one of them move during the time in question. The move was a short enough distance that it was accomplished without using a motor vehicle, with the witnesses, Brown, and one or two others, moving boxes and furniture from one location to the other. These locations were not far from the scene of the shooting. Brown also offered the testimony of one witness who testified he was present at the scene of the shooting, although not himself involved, that he knew Brown, and that Brown was not present at the shooting, and, specifically, was not the shooter.
 {¶ 7} The Mapp brothers, and Dayton Police Detective William Elzholz, testified concerning photospreads that were used to identify Brown as the perpetrator, after Elzholz received an anonymous tip that Brown was the shooter. We have reviewed the photospreads, which are identical except for the order of the photos. One photospread, which was shown to one of the Mapp brothers, has Brown in the number one position; the other, which was shown to the other Mapp brother, has Brown in the number three position. Both Jason and Derren Mapp, who were shown the photospreads separately, and without having had an opportunity to consult one another in the interval between the two identifications, identified Brown immediately and positively as the shooter. They also identified Brown at various court hearings, and at the trial.
 {¶ 8} At the trial, Elzholz testified that his recording of the anonymous informant's message left on his voice mail had been recorded over, so that it was no longer available. He testified that he was probably the person who recorded it over, having been under the impression that it was no longer needed. The tip was that Brown was the person who had shot "the two white dudes" on Saturday, February 27th. The shooting occurred on February 27th, but that was a Friday, not a Saturday. The anonymous informant also reported that Brown was "out of control."
 {¶ 9} The Mapp brothers testified that after they had finished painting at a location in Germantown, they were paid for the week, and then drove together in the van to the Hauer Music store, in Dayton, where Derren Mapp was interested in purchasing a snare drum cover. He purchased some other supplies, instead, and after leaving Hauer Music store, near Fourth and Jefferson Streets, they wound up on West Third Street, where Jason stopped for gas. After leaving the gas station, Jason, who was thirsty, realized that he had forgotten to buy a soda at the gas station. He remembered an "AM/PM" store down Third Street, and went in that direction, intending to buy something to drink.
 {¶ 10} After Jason Mapp turned on the side street adjacent to the store, he and his brother noticed a number of African-American males gesturing and shouting to them that "we have what you want," gathered in the parking lot next to the store. Both Mapp brothers concluded that this was a situation to avoid. Jason went to the end of the block, then made a U-turn, and drove back toward Third Street, where there was a stop sign. The Mapps waited behind one other vehicle that was waiting to make a right turn on Third Street, and did their best to ignore the men outside. Soon after stopping, at least four men ran up to the Mapps' van, on each side. The Mapps testified that Brown stuck a handgun inside the passenger-side window, which was partially open, and demanded their money, saying, "I ain't playing." Derren Mapp, in the passenger seat, grabbed for the gun, pushing it away from his head. The gun almost immediately went off. Derren Mapp began yelling for his brother to take off. Derren Mapp only realized later, as the van was turning on Third Street, that he had been shot in the stomach.
 {¶ 11} Jason Mapp also identified Brown. He testified that he was shot in the hand. Each Mapp brother testified that they only were aware of the shot that wounded him, and only discovered that the other brother had been shot after they were fleeing from the scene. Jason Mapp's wound bled profusely; Derren Mapp's did not. A couple of the windows of the van were shot out, and two spent rounds were recoved later from the interior of the van.
 {¶ 12} The Mapps noticed and followed an ambulance. When it pulled into a service station, they got out of their van and let the ambulance personnel know they had been shot. They were taken to different hospitals, based on the differing nature of their wounds.
 {¶ 13} Jason Mapp was released from the hospital later that day. Surgery was performed on Derren Mapp. It was discovered that the bullet wounding him was still in his torso, lodged near his spinal column. He was released the next day.
 {¶ 14} As noted, Brown called a number of witnesses on his behalf.
 {¶ 15} Following the trial, after several hours of deliberation, the jury reported that it was unable to agree on a verdict, and that further deliberations were not likely to help. Neither party requested an Allen charge; the trial judge declared a mistrial; and the jury was discharged.
 {¶ 16} After the hung jury, Brown moved to dismiss the charges, contending that the anonymous tip violated his right of confrontation under Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, and that his Due Process rights were violated by the destruction of the recording of the anonymous tip before he had had an opportunity to listen to it. The trial court held a hearing on this motion, and denied it.
 {¶ 17} Thereafter, Brown entered into a plea bargain with the State wherein he pled no contest to one count of Aggravated Robbery, without a firearm specification, and all the other counts and specifications were dismissed. The State agreed that Brown would receive only the minimum, three-year sentence for the offense, and the trial court informed Brown that it would also agree that he would receive the minimum sentence if he pled no contest. The trial court explained that although Brown would be eligible for the imposition of community control sanctions, they would not be considered, and would not be imposed, as an alternative to incarceration if the plea bargain were accepted. At a hearing in open court, with the advice and assistance of counsel, Brown entered into the plea bargain and pled no contest to one count of Aggravated Robbery, without a firearm specification. In due course, the trial court imposed a minimum, three-year sentence, with credit for jail time served.
 {¶ 18} From his conviction and sentence, Brown appeals.
 II {¶ 19} Pursuant to Anders v. California, supra, Brown's appellate counsel has advised this court that he can find no potential assignments of error having arguable merit. We have performed our duty, under Anders, to review the record independently, and neither can we.
 {¶ 20} Counsel indicates that he considered, but rejected, an argument that the trial court erred by denying a motion to suppress the identification evidence on the ground that the photospread identifications by the Mapp brothers were unduly suggestive. We have examined the photospreads, and we have considered the testimony of Detective Elzholz, who administered the photospread identification procedure, and the Mapp brothers, who each individually looked at the photospreads and immediately picked out Brown and indicated certainty in their identifications. We find nothing particularly suggestive about the photospreads. Elzholz explained that he could not legally use juvenile photographs to round out the photospread, but that he picked young-looking adults, and that is consistent with our examination of the photospreads; all of the persons pictured are young-looking African-American males. They all appear to be wearing civilian clothing, and the size of their faces in each photograph is similar with one another and with the photograph of Brown. The only apparent difference in the nature of the photographs is that Brown's photograph, which was cropped from a family photo, is not as crisply focused. Given the immediacy and certainty with which both Mapp brothers independently picked Brown out of each spread, and considering their testimony that each was focused on the perpetrator's face for the twenty seconds or so that the situation unfolded before the shots were fired, which supports a finding that their identifications were reliable, we conclude that no reasonable argument can be made that the trial court erred in denying the motion to suppress.
 {¶ 21} Appellate counsel also considered, but rejected, the possibility that there is a reasonable argument that the trial court erred in denying the motion to dismiss made after the mistrial. As to the alleged violation of Brown's right to confront the anonymous tipster, under Crawford v. Washington,
supra, dismissal of the charges would not be the proper remedy. The most relief to which Brown arguably would have been entitled would be the exclusion of the evidence of the call. We are aware of no authority for the proposition that a police officer is not allowed to rely upon information from a witness that the defendant will not be able to confront at trial in the officer's developing or locating other evidence or witnesses. Crawford v.Washington, supra, involves the right to confront a witness at trial, not the right to confront every witness at every stage of a police investigation.
 {¶ 22} Finally, as to the spoliation of evidence issue, we agree with the trial court that there is nothing in this record from which a reasonable argument can be made that the recording of the anonymous call was exculpatory in any sense. To the contrary, it inculpated Brown. With respect to material evidence that is not exculpatory, there must be a finding that bad faith must have been involved in the destruction of the evidence. We have reviewed the videotape of Detective Elzholz's testimony on this subject, and we see nothing upon which a reasonable argument can be based that the trial court abused its discretion in finding that no bad faith was involved in the over-recording of the tape of the anonymous call.
 {¶ 23} After having reviewed the entire record, we have found no potential assignments of error having arguable merit. Accordingly, we conclude that this appeal is wholly frivolous.
 {¶ 24} The judgment of the trial court is Affirmed.
 . . . . . . . . . . . . .
Grady, P.J., and Wolff, J., concur.